UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No.

CYNTHIA J. BUNNING,

                    Plaintiff,

v.

ZIMMER, INC.,
ZIMMER US, INC.,
ZIMMER HOLDINGS, INC., and
ZIMMER ORTHOPAEDIC SURGICAL PRODUCTS, INC.,

                    Defendants.

---

## COMPLAINT AND JURY DEMAND

---

       Plaintiff, Cynthia J. Bunning ("Plaintiff"), residing in the state of Colorado, by and through undersigned counsel, alleges as follows:

### INTRODUCTION AND SUMMARY OF ACTION

       1.    Defendants' prosthetic knee device known as the NexGen® Complete Knee Solution is prone to fail by fracture of the polyethylene tibial post of the tibial tray.  As a result of this defect many patients, such as Plaintiff here, who have had this device implanted have endured sudden and unexpected catastrophic failure, i.e., fracture, of the polyethylene tibial post of their NexGen® Knee tibial tray, causing pain and suffering, debilitating lack of mobility, damage to surrounding tissue and bone, and an emergency revision surgery to remove and replace the failed device.

## PARTIES

2.      Plaintiff Cynthia J. Bunning is an adult, and a citizen and resident of the state of Colorado.

3.      Plaintiff has been injured due to a defective medical device, i.e., the NexGen® Complete Knee Solution [hereinafter "NexGen® Knee"] prosthetic knee, designed, manufactured, and distributed by Defendants.

4.      Defendant Zimmer, Inc. is a corporation organized and existing under the laws of Delaware, with its principal place of business located in Warsaw, Indiana, and, therefore, is deemed to be a citizen of the state of Delaware, and a citizen of the state of Indiana.

5.      Zimmer US, Inc. is a Delaware Corporation, with its principal place of business in Warsaw, Indiana, and, therefore, is deemed to be a citizen of the state of Delaware and the state of Indiana.

6.      Defendant Zimmer Holdings, Inc. is a corporation organized and existing under the laws of Delaware, with its principal place of business located in Warsaw, Indiana, and, therefore, is deemed to be a citizen of the state of Delaware, and a citizen of the state of Indiana.

7.      Defendant Zimmer Orthopaedic Surgical Products, Inc. is a corporation organized and existing under the laws of Ohio, with its principal place of business in Dover, Ohio, and, therefore, is deemed to be a citizen of the state of Ohio.

8.      At all times material hereto, Defendants developed, designed, tested, manufactured, distributed, marketed, and sold the NexGen® Complete Knee Solution product that is the subject of this civil action.

9.      Defendants, Zimmer, Inc., Zimmer US, Inc., Zimmer Holdings, Inc.,  and Zimmer Orthopaedic Surgical Products, Inc. hereinafter are collectively referred to as "Zimmer" or "Defendants."

10.      At all times relevant herein, Defendants were the agents of each other, and in doing the things alleged herein, each Defendant was acting within the course and scope of its agency and was subject to and under the supervision of its Co-Defendants.

11.      Upon information and belief, always herein mentioned, the employees of all Defendants, their subsidiaries, affiliates, and other related entities, as well as the employees of Defendants' subsidiaries, affiliates, and other related entities, were the agents, servants and employees of Defendants, and at all relevant times, were acting within the purpose and scope of said agency and employment.

12.      Whenever reference in this Complaint is made to any act or transaction of Defendants, such allegations shall be deemed to mean that the principals, officers, employees, agents, and/or representatives of Defendants committed, knew of, performed, authorized, ratified and/or directed such act or transaction on behalf of Defendants while actively engaged in the scope of their duties.

## JURISDICTION AND VENUE

13.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) as the parties are citizens of different states, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and (c), as Plaintiff resides in the state of Colorado, within the jurisdictional boundaries of this United States District Court, and a substantial part of the events giving rise to this claim occurred in the state of Colorado.

## THE TOTAL KNEE REPLACEMENT PROCEDURE

15.     Total knee arthroplasty ("TKA"), also called total knee replacement ("TKR"), is a commonly performed medical procedure, intended to help relieve pain and improve joint function in people with severe knee degeneration due to arthritis or trauma.

16.     Knee replacement is the process of replacing the joint surfaces with artificial materials.

17.     The intent of the procedure is: (1) to relieve pain caused by arthritis, (2) to restore range of motion, or the degrees of knee flexion and extension, and (3) to correct any misalignment.

18.     The TKA procedure is done by separating the muscles and ligaments around the knee to expose the inside of the joint.  The ends of the femur and tibia are removed, as is often the underside of the patella.

19.     In total knee replacement surgery, the surface of the femur [thigh bone] at the knee joint is replaced with a contoured metal component designed to fit the curve of the bone.  The surface of the tibia [lower leg bone] at the knee joint is also replaced with a metal component.  A polyethylene [plastic] component is inserted between the metal tibial and femoral devices to serve as a replacement for cartilage.  The undersurface of the patella [kneecap] may also be replaced with a polyethylene device.

## HISTORY OF ZIMMER AND ZIMMER NEXGEN® KNEES

20.     Zimmer was founded in 1927, and purports to be a worldwide leader in the design and manufacture of orthopedic reconstructive, spinal and trauma devices, and related orthopedic surgical products.

21.     In 1927, Justin Zimmer, a national sales manager for DePuy, an orthopedic splint manufacturer, left DePuy and started Zimmer Manufacturing Company.  Originally a company that manufactured orthopedic braces, it expanded into the surgical implant business.  Today, Zimmer designs, develops, manufactures, markets, and distributes orthopedic implants as well as other medical products and surgical tools.

22.     In 1995, Zimmer introduced its Next Generation (NexGen®) Complete Knee Solution system, with various component configurations, as well as surgical guides and tools. Designed largely by John Insall, the system received FDA 510(k) clearance, demonstrating that the device was "substantially equivalent" to predicate devices previously cleared by the FDA.

23.     The NexGen® Knee was an integrated system combining a femoral component, a tibial component, a polyethylene articulating surface, and a polyethylene replacement for the posterior surface of the patella.

24.     The Zimmer NexGen® Complete Knee system and component parts are all interrelated and predicated upon the same design.

25.     The certain versions of the NexGen® Knee include a polyethylene articulating surface with polyethylene tibial post.

5

26.     In seeking approval for the sale of the Zimmer NexGen® Knee Defendants represented that each of the devices was substantially equivalent to a previously approved or predicate device and therefore could receive premarket approval under Section 510(k) of the FDA.

27.     By claiming substantial equivalence, Defendants knew the Zimmer NexGen® Knees were subject to less testing and scrutiny than if brought to market by way of the more rigorous FDA Premarket Approval [PMA] pathway.

28.     After putting the NexGen® Knee on the market Zimmer began to receive notice that the polyethylene tibial posts on the tibial trays were fracturing.

## EXPECTATIONS AND PERFORMANCE OF THE

## NEXGEN® KNEE POLYETHYLENE TIBIAL POST

29.     Orthopedic surgeons reasonably expect that the tibial post on a tibial tray of a prosthetic knee will not fracture at any time after implantation in the intended patient population, if reasonably used by the patient, and not subject to abuse or misuse.

30.     Orthopedic surgeons reasonably expected that the polyethylene tibial post on the tibial tray of the NexGen® Knee would not fracture at any time after implantation in the intended patient population, if reasonably used by the patient, and not subject to abuse or misuse.

31.     Defendants reasonably expected that the polyethylene tibial post on the tibial tray of the NexGen® Knee would not fracture at any time after implantation in the intended patient population, if reasonably used by the patient, and not subject to abuse or misuse.

32.     Patients who were implanted with the NexGen® Knee reasonably expected that the polyethylene tibial post on the tibial tray of the NexGen® Knee would not fracture at any time after

implantation in the intended patient population, if reasonably used by the patient, and not subject to abuse or misuse.

33.     The NexGen® Knee, as designed, does not perform and function in the patient population for which it was designed, marketed, and intended to be implanted in without failing by fracture of the polyethylene tibial post on the tibial tray.

34.     The NexGen® Knee, as manufactured, does not perform and function in the patient population for which it was designed, marketed, and intended to be implanted in without failing by fracture of the polyethylene tibial post on the tibial tray.

## PLAINTIFF'S NEXGEN® KNEE

35.     On June 25, 2009, Plaintiff underwent a right total knee arthroplasty performed at Saint Anthony Central Hospital, Denver, Colorado, and received a NexGen® Knee with a polyethylene component, including a polyethylene tibial post.

36.     An employee and/or agent of Defendants provided the NexGen® Knee to Peter N. Lammens, M.D., the orthopedic surgeon who implanted the device in Plaintiff.

37.     After initial recovery from the implantation surgery, Plaintiff did well for ten years.

38.     During that time Plaintiff used her prosthetic knee as she had been advised, and otherwise use her prosthetic knee as reasonably expected.

39.     On July 9, 2019, Plaintiff suddenly began to experience pain in her right knee.

40.     X-rays taken of Plaintiff's right knee on July 9, 2019, were interpreted as, "Components are in satisfactory position.  There is no fracture, deformity or other complications."

41.     However, Plaintiff's pain continued and worsened.

42.     On September 11, 2019, Plaintiff was diagnosed by Dr. Lammens with "Possible broken post of plastic polyethylene liner of right TKA."  Dr. Lammens recommended a revision surgery.

43.     On November 11, 2019, Mark S. Tuttle, M.D., an orthopedic surgeon, performed a revision surgery on Plaintiff's right knee at Presbyterian/St. Luke's Medical Center, Denver Colorado.

44.     In that November 11, 2019, revision surgery it was confirmed that the polyethylene tibial post of the tibial tray of Plaintiff's NexGen® Knee had in fact fractured.

45.     Dr. Tuttle removed and replaced the fractured component of Plaintiff's NexGen® Knee.

46.     Thereafter Plaintiff recovered reasonably well from the November 11, 2019, revision surgery.

## PLAINTIFF'S INJURIES AND DAMAGES

47.     Plaintiff has suffered or incurred the following personal and economic injuries because of the fracture of the tibial post of Defendants' NexGen® Knee:

(a)     Undergoing an emergency revision surgery that would not have been needed if the NexGen® Knee had performed satisfactorily, and not catastrophically failed by fracture;

(b)     Pain and suffering;

(c)     Physical disability and immobility;

(d)     Loss of enjoyment of life;

(e)     Annoyance and inconvenience;

(f)     Physical impairment and disfigurement;

(g)     Medical expenses in excess of $75,000; and,

(h)     Loss of earnings and income;

## FIRST CAUSE OF ACTION

### STRICT PRODUCTS LIABILITY
### (DESIGN DEFECT)

48.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs 1 through 47, and further alleges as follows:

49.     At all times herein mentioned, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed the NexGen® Knee as hereinabove described that was surgically implanted in Plaintiff.

50.     At all times herein mentioned, the NexGen® Knee was in an unsafe, defective, and inherently dangerous condition for users such as Plaintiff that had the device surgically implanted.

51.     The NexGen® Knee was in an unsafe, defective, and inherently dangerous condition at the time it left Defendants' possession.

52.     At all times herein mentioned, the NexGen® Knee was expected to and did reach the usual consumers, handlers, recipients, and persons coming into contact with said product without substantial change in the condition in which it was designed, produced, manufactured, sold, distributed, and marketed by Defendants.

53.     The NexGen® Knee's unsafe, defective, and inherently dangerous condition was a cause of injury to Plaintiff.

54.     The NexGen® Knee failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

55.    Plaintiff's injuries resulted from use of the NexGen® Knee that was both intended and reasonably foreseeable by Defendants.

56.    At all times herein mentioned the NexGen® Knee posed a foreseeable risk of danger inherent in the design which greatly outweighed the benefits of that design.

57.    At all times herein mentioned, the NexGen® Knee was defective and unsafe, and Defendants knew or had reason to know that said product was defective and unsafe, especially when used in the form and manner as provided by Defendants.

58.    At all times herein mentioned, Defendants knew, or should have known, that the NexGen® Knee was in a defective condition and was and is inherently dangerous and unsafe.

59.    At the time of the implantation of the NexGen® Knee into Plaintiff, the aforesaid product was being used for the purposes and in a manner normally intended, namely for use as a knee replacement device.

60.    Defendants, with this knowledge, designed their NexGen® Knee in a dangerous condition for use by the public and, in particular, Plaintiff.

61.    At all times herein mentioned the NexGen® Knee lacked sufficient utility for any group of users, including Plaintiff.

62.    Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

63.    Defendants failed to complete adequate pre-market testing and post-market surveillance on the NexGen® Knee.

64.    Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product which, when used in its intended or reasonably

foreseeable manner, created an unreasonable risk to the health of consumers and to Plaintiff and Defendants are therefore strictly liable for the injuries sustained by Plaintiff.

65.     Defendants are strictly liable for Plaintiff's injuries in the following ways:

(a)     the NexGen® Knee as designed, manufactured, sold, and supplied by the Defendants, was defectively designed, and placed into the stream of commerce by Defendants in a defective and unreasonably dangerous condition;

(b)     Defendants failed to properly market, design, manufacture, distribute, supply, and sell the NexGen® Knee;

(c)     Defendants failed to adequately test the NexGen® Knee; and,

(d)     A feasible alternative design existed that was capable of preventing Plaintiff's injuries.

66.     As a direct and proximate result of Defendants' placement of the defective NexGen® Knee into the stream of commerce, Plaintiff experienced severe harmful effects including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as an additional revision surgery to replace the device with the increased risks of complications and death from such further surgery.

67.     Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the safety of recipients of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.

## SECOND CAUSE OF ACTION

### STRICT PRODUCTS LIABILITY
### (FAILURE TO WARN)

68.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs 1 through 67, and further alleges as follows:

69.     Defendants designed, manufactured, tested, marketed, and distributed into the stream of commerce the NexGen® Knee.

70.     The NexGen® Knee placed into the stream of commerce by Defendants was defective due to inadequate warnings because Defendants knew or should have known that the NexGen® Knee could fail early in patients and therefore give rise to physical injury, pain and suffering, debilitation, and the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery but failed to give consumers adequate warning of such risks.

71.     The NexGen® Knee is unreasonably dangerous because it was sold to Plaintiff without adequate warnings regarding, *inter alia,* the propensity of the polyethylene tibial post of the NexGen® Knee to fracture, and thereby cause serious pain and necessitate emergency surgery to remove and replace the fractured device.

72.     The NexGen® Knee placed into the stream of commerce by Defendants was surgically implanted in a manner reasonably anticipated by Defendants.

73.     Defendants are strictly liable for Plaintiff's injuries in the following ways:

   (a)     Defendants failed to warn and place adequate warnings and instructions on the NexGen® Knee; and,

12

(b)     Defendants failed to provide timely and adequate post-marketing warnings and instructions after they knew of the risk of injury associated with the use of the NexGen® Knee.

74.     As a direct and proximate result of Defendants' placement of the defective NexGen® Knee into the stream of commerce, Plaintiff experienced severe harmful effects including, but not limited to, partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as an emergency revision surgery to remove and replace the fractured device with the increased risks of complications and death from such further surgery.

75.     Defendants' conduct, as described above, was extreme and outrageous.  Defendants risked the safety of recipients of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.  Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting recipients of Defendants' NexGen® Knee.

### THIRD CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY

76.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs 1 through 75, and further alleges as follows:

77.     Defendants designed, manufactured, tested, marketed, and distributed into the stream of commerce the NexGen® Knee.

78.     Defendants expressly warranted that the NexGen® Knee was a safe and effective knee replacement system and that it was appropriate for young and active patients.

79.     Indeed, as set forth in detail above, Defendants made numerous representations about the quality, safety, effectiveness and expected lifetime of the NexGen® Knee which form express warranties.

80.     The NexGen® Knee placed into the stream of commerce by Defendants did not conform to these express representations because they failed early thereby giving rise to unnecessary physical injury, pain and suffering, debilitation, and the need for a revision surgery to replace the NexGen® Knee with the attendant risks of complications and death from such further surgery.

81.     As a direct and proximate result of Defendants' breach of express warranties regarding the safety and effectiveness of the NexGen® Knee, Plaintiff experienced significant damages, including but not limited to physical injury, economic loss, pain and suffering, and the need for further surgery to replace the faulty NexGen® Knee, and will continue to suffer such damages in the future.

## FOURTH CAUSE OF ACTION

### NEGLIGENCE

82.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs 1 through 81, and further alleges as follows:

83.     Defendants had a duty to exercise reasonable care in designing, researching, manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality control, and/or distribution of the NexGen® Knee into the stream of commerce, including a duty to assure

14

that the device would not cause those who had it surgically implanted to suffer adverse harmful effects from it.

84.    Defendants failed to exercise reasonable care in designing, researching, manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality control, and/or distribution of the NexGen® Knee into interstate commerce in that Defendants knew or should have known that those individuals that had the device surgically implanted were at risk for suffering harmful effects from the polyethylene tibial post fracturing, including but not limited to, partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for an emergency revision surgery to replace the fractured device with the increased risks of complications and death from such further surgery.

85.    The negligence of Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

(a)    designing the NexGen® Knee in such a way that the polyethylene tibial post fractures while reasonably being used as it was expected to be used;

(b)    designing the NexGen® Knee in such a way that the polyethylene tibial post fractures while being used as it was marketed and intended to be used;

(c)    manufacturing the NexGen® Knee in such a way that the polyethylene tibial post fractures while reasonably being used as it was expected to be used;

15

(d)     manufacturing the NexGen® Knee in such a way that the polyethylene tibial post fractures while being used as it was marketed and intended to be used;

(e)     designing, manufacturing, producing, creating, and/or promoting the NexGen® Knee without adequately, sufficiently, or thoroughly testing the polyethylene tibial post, including both pre-market testing and post-market surveillance;

(f)     not conducting sufficient testing programs to determine whether or not the NexGen® Knee polyethylene tibial post was safe for use;

(f)     failing to adequately and correctly warn Plaintiff or Plaintiff's surgeon, hospitals, and/or healthcare providers of the danger of fracture of the NexGen® Knee polyethylene tibial post;

(g)     negligently failing to recall their dangerous and defective NexGen® Knee polyethylene tibial post at the earliest date that it became known that the device was, in fact, dangerous and defective;

(h)     failing to provide adequate instructions regarding safety precautions to be negligently representing that the NexGen® Knee with the polyethylene tibial post was safe for use for its intended purpose, when, in fact, it was unsafe;

(k)     failing to use due care in designing and manufacturing the NexGen® Knee polyethylene tibial post so as to ensure its longevity without catastrophic failure by fracture;

16

        (m)    were otherwise careless and/or negligent in ways yet to be discovered.

86.    Despite the fact that Defendants knew or should have known that the NexGen® Knee with the polyethylene tibial post caused harm to individuals that had the device surgically implanted, Defendants continued to market, manufacture, distribute and/or sell the NexGen® Knee with that component.

87.    Defendants knew or should have known that consumers such as Plaintiff would suffer foreseeable injury, and/or be at increased risk of suffering injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

88.    Defendants' negligence was the proximate cause of Plaintiff's physical, mental and emotional injuries and harm, and economic loss which Plaintiff has suffered and/or will continue to suffer.

89.    By reason of the foregoing, Plaintiff experienced and will continue to experience severe harmful effects as a result of Defendants' negligence as set forth above.

90.    Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the safety of recipients of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting recipients of Defendants' NexGen® Knee. Defendants' outrageous conduct warrants an award of punitive damages.

## **FIFTH CAUSE OF ACTION**

## **NEGLIGENT MISREPRESENTATION**

91.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs 1 through 90, and further alleges as follows:

92.     Defendants supplied false information to the public, to Plaintiff and to Plaintiff's physicians regarding the high-quality, safety and effectiveness of the NexGen® Knee.  Defendants provided this false information to induce the public, Plaintiff and Plaintiff's physicians to purchase and implant a NexGen® Knee.

93.     Defendants knew or should have known that the information they supplied (and omitted) regarding the purported high-quality, safety and effectiveness of the implant would induce Plaintiff and Plaintiff's physicians to purchase and use a NexGen® Knee was false and misleading.

94.     Defendants were negligent in obtaining or communicating false information regarding the purported quality, safety, and effectiveness of the NexGen® Knee.

95.     Plaintiff and Plaintiff's physicians relied on the false information supplied and/or omitted by Defendants to Plaintiff's detriment by causing the NexGen® Knee to be purchased and implanted in Plaintiff.

96.     Plaintiff and Plaintiff's physicians were justified in their reliance on the false information supplied and/or omitted by Defendants regarding the quality, safety and effectiveness of the NexGen® Knee.

97.     As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff experienced and/or will experience significant damages, including but not limited to

permanent physical injury, economic loss, pain and suffering and the need for additional revision surgeries to repair the physical damage to Plaintiff caused by the NexGen® Knee.

98.     Defendants' conduct, as described above, was extreme and outrageous.  Defendants risked the safety of recipients of their products, including Plaintiff, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public.  Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting recipients of Defendants' NexGen® Knee.  Defendants' outrageous conduct warrants an award of punitive damages.

**SIXTH CAUSE OF ACTION**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

99.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs 1 through 98, and further alleges as follows:

100.     Defendants designed, manufactured, tested, marketed, and distributed into the stream of commerce the NexGen® Knee with the polyethylene tibial post.

101.     At the time Defendants designed, manufactured, tested, marketed, and distributed into the stream of commerce the NexGen® Knee with the polyethylene tibial post, Defendants knew the use for which the NexGen® Knee was intended, and impliedly warranted the NexGen® Knee to be of merchantable quality.

102.     Plaintiff reasonably relied upon the skill and judgment of Defendants as to whether the NexGen® Knee with the polyethylene tibial post was of merchantable quality.

103.     Contrary to Defendants' implied warranties, the NexGen® Knee with the polyethylene tibial post was not of merchantable quality or safe for the ordinary purposes for which

19

it was to be used, because the NexGen® Knee was unreasonably dangerous and/or not reasonably fit for its intended, anticipated or reasonably foreseeable use as described above.

104.    As a direct and proximate result of Defendants' breach of implied warranties regarding the safety and effectiveness of the NexGen® Knee with the polyethylene tibial post, Plaintiff experienced significant damages, including but not limited to physical injury, economic loss, pain and suffering, and the need for emergency revision surgery to replace the faulty device, and will continue to suffer such damages in the future.

**SEVENTH CAUSE OF ACTION**

**VIOLATION OF COLORADO CONSUMER PROTECTION ACT**
**C.R. S. § 6-1-101, et. seq.**

105.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs 1 through 104, and further alleges as follows:

106.    Defendants unfairly, unconscionably, knowingly, and deceptively advertised, marketed, sold, and represented the NexGen® Knee as a high-quality, safe, and effective knee replacement system to Plaintiff and Plaintiff's physicians.

107.    Before they advertised, marketed, sold, and represented the NexGen® Knee that was implanted in Plaintiff, Defendants knew or should have known of the unreasonable dangers and serious health risks that the NexGen® Knee posed to patients like Plaintiff.

108.    Plaintiff purchased and used the NexGen® Knee for personal use and thereby suffered ascertainable losses as a result of Defendants' actions in violation of consumer protection laws.

109.    Had Defendants not engaged in the deceptive conduct described herein, Plaintiff would not have purchased and/or paid for the NexGen® Knee and would not have incurred related medical costs and injury.

110.    Defendants engaged in wrongful conduct while at the same time obtaining, under false pretenses, moneys from Plaintiff for the NexGen® Knee that would not have been purchased had Defendants not engaged in unfair and deceptive conduct.

111.    Unfair methods of competition or deceptive acts or practices that were proscribed by law, include the following:

> (a)    Representing that goods or services have characteristics, ingredients, uses, benefits, or quantities that they do not have;
>
> (b)    Failing to disclose material information concerning goods which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction; and,
>
> (c)    Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding.

112.    Plaintiff was injured by the cumulative and indivisible nature of Defendants' conduct.  The cumulative effect of Defendants' conduct directed at patients, physicians and consumers was to create demand for and sell the NexGen® Knee.  Each aspect of Defendants' conduct combined to artificially create sales of the NexGen® Knee.

113.    Defendants have a statutory duty to refrain from unfair or deceptive acts or trade practices in the design, development, manufacture, promotion, and sale of the NexGen® Knee.

114.    Had Defendants not engaged in the deceptive conduct described above, Plaintiff would not have purchased and/or paid for the NexGen® Knee and would not have incurred related medical costs.

115.    Defendants' deceptive, unconscionable, or fraudulent representations and material omissions to patients, physicians, and consumers, including Plaintiff, constituted unfair and deceptive acts and trade practices in violation of the Colorado Consumer Protection Act.

116.    Defendants' actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive, or fraudulent acts, or trade practices in violation of the Colorado Consumer Protection Act.

117.    Defendants have engaged in unfair competition or unfair or deceptive acts or trade practices or have made false representations in violation of the Colorado Consumer Protection Act, C.R.S. § 6-1-101, *et seq.*137.

118.    Under the statute listed above to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and false advertising, Defendants are the suppliers, manufacturers, advertisers, and sellers, who are subject to liability under such legislation for unfair, deceptive, fraudulent, and unconscionable consumer sales practices.

119.    Defendants violated the statutes that were enacted in various states to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and false advertising, by knowingly and falsely representing that the NexGen® Knee was fit to be used for the purpose for which it was intended, when in fact the NexGen® Knee was defective and dangerous, and by other acts alleged herein.  These representations were made in uniform promotional materials.

120.     The actions and omissions of Defendants alleged herein are uncured or incurable deceptive acts under the statutes enacted in the states to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and false advertising.

121.     Defendants had actual knowledge of the defective and dangerous condition of the NexGen® Knee and failed to take any action to cure such defective and dangerous conditions.

122.     Plaintiff and the medical community relied upon Defendants' misrepresentations and omissions in determining which knee implant to use and recommend.

123.     Defendants' deceptive, unconscionable, or fraudulent representations and material omissions to patients, physicians, and consumers, constituted unfair and deceptive acts and practices.

124.     By reason of the unlawful acts engaged in by Defendants, and as a direct and proximate result thereof, Plaintiff has suffered ascertainable losses and damages.

125.     As a direct and proximate result of Defendants' violations of the states' consumer protection laws, Plaintiff has sustained economic losses and other damages and is entitled to statutory and compensatory damages including, but not limited to, treble damages and attorney fees, in an amount to be determined at trial.

126.     As specifically described in detail above, Defendants knew that the NexGen® Knee subjected patients to unexpected failure, painful and harmful physical injury, and the need for revision surgery.

127.     As a direct and proximately result of Defendants' representations, Plaintiff has experienced and/or will experience significant damages, including but not limited to permanent

physical injury, economic loss, pain and suffering, and revision surgery, caused by the failure of the NexGen® Knee.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief against Defendants, jointly and severally, as follows:

A.   Compensatory damages, in excess of the amount required for federal diversity jurisdiction, and in an amount to fully compensate Plaintiff for all of her injuries and damages, past, present, and future, including but not limited to:

      a.   Pain and suffering;

      b.   Physical disability and immobility;

      c.   Loss of enjoyment of life;

      d.   Annoyance and inconvenience;

      e.   Physical impairment and disfigurement.

B.   Special damages, in excess of the amount required for federal diversity jurisdiction and in an amount to fully compensate Plaintiff for all of her injuries and damages, past, present, and future, including but not limited to, past and future medical expenses, costs for past and future rehabilitation and/or home health care, past and future lost income, loss of future earning capacity, permanent disability, including permanent instability and loss of balance, and pain and suffering;

C.      Court costs;

D.      Double or treble damages as allowed by law pursuant to C.R. S. § 6-1-101, et. seq.;

E.      Attorney fees as allowed by law pursuant to C.R. S. § 6-1-101, et. seq.;

F.      Punitive damages;

G.      Pre-judgment and post-judgment interest in the maximum amount allowed by law;

and,

H.      Such further relief as this Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims asserted in this Complaint.

Respectfully submitted this 9th day of July 2021.

s/ *George E. McLaughlin*
George E. McLaughlin, CO # 16364
McLaughlin Law Firm, P.C.
1890 Gaylord Street
Denver, CO 80206-1211
720-420-9800 – telephone
303-322-3423 – facsimile
gem@mcllf.com